ROBERT FRANEY

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 23, 1904.*

CRIMINAL LAW—*what essential to conviction for assault with intent to rape.* Proof of urgent solicitations to submit to sexual intercourse, though accompanied by assault, will not sustain an indictment for assault with intent to commit rape, unless it appears, beyond reasonable doubt, that the accused intended to accomplish the act by force and without the consent of the female.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

R. S. MCILDUFF, T. F. DONOVAN, and T. W. SHIELDS, for plaintiff in error.

H. J. HAMLIN, Attorney General, and A. C. BALL, State's Attorney, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error was convicted in the circuit court of Livingston county of an assault upon Essie Gimpel with intent to commit rape, and was sentenced to confinement in the penitentiary.

The following facts proved at the trial were not in dispute: On July 13, 1903, Essie Gimpel, who was about seventeen and a half years old and had been married three months, lived with her husband, Chris Gimpel, in a farm house facing north, three or four rods from a road running east and west and several rods from a road running north and south. On that morning, at about half-past six, the defendant, Robert Franey, came to the house to help Chris Gimpel put up hay, but they concluded not to work at the hay and defendant left, going along the road in the direction of his brother Michael's place, where he lived, about half a mile east. One of

the hired men took a team and went across the road to
plow corn in a field north-east of the house, and the other
hired man went to another field south of the house with
a mower, to cut hay. There was a potato patch about
forty rods from the house, north of a pasture lot across
the road, and Chris Gimpel went there about eight o'clock
to dig potatoes for dinner. The house was on the corner
near the two public roads, and Chris Gimpel and the two
hired men were all in sight from the house. It was claimed
on the part of the People that while Chris Gimpel was
digging the potatoes the defendant returned to the house
and committed the crime for which he was convicted.

The defense consisted of the defendant's denial and
evidence tending to prove an *alibi* and previous good
character. While contending that the evidence was not
sufficient to prove that he returned to the house or made
an assault upon Essie Gimpel, the plaintiff in error also
insists that the evidence on the part of the prosecution
did not establish the intent necessary to constitute the
crime charged. That evidence was to the following ef-
fect: Essie Gimpel testified that after her husband went
to the potato patch the defendant came where she was
churning, near a summer kitchen east of the house, and
sat down on the walk; that after awhile he came and
took hold of the churn and churned a little, and told
her not to tell his sister-in-law that he churned for her;
that he took hold of her arm and looked in the summer
kitchen and said, "Let's go in there;" that he did not
hurt her arm, and she jerked away and went in through
the kitchen to the dining room and commenced piling up
dishes; that in about five minutes he came into the din-
ing room with his shoes off and took hold of her again
and kissed her, and kept saying, "Come on; I like you;
you like me too;" that he put his arm around her waist
and tried to make her sit on his lap, and she did not
know how many times he kissed her; that he got her
dress waist open and his hand inside; that he drew her

into the bed-room and to the bed, where she sat on the side of the bed, and he kept saying, "Come on;" that he tried to push her over, and continued most urgent solicitations; that she did not cry out or strike him, but resisted and refused; that she said her husband would come and shoot him, and he then let go of her and she ran down the lane to her husband. Chris Gimpel testified that his wife came to him crying, and he went to the house with her; that they met the defendant, who wanted to shake hands and apologize, and said he had done wrong; that they went to the house together and the defendant stayed at the house about half an hour; that the defendant said he would not have it get out on him for any money, and asked him what they would take and say nothing about it; that witness told defendant he had better go home; that they did not need him and he would not have him around, and he went home.

Rape is the carnal knowledge of a female forcibly and against her will, (Hurd's Stat. 1899, p. 610,) and an assault is an unlawful attempt, coupled with present ability, to commit a violent injury upon the person of another. An assault with intent to rape includes every ingredient of the crime of rape except the actual accomplishment of that crime. (23 Am. & Eng. Ency. of Law,—2d ed.—864.) The proof must show, beyond a reasonable doubt, the unlawful attempt which constitutes an assault with an intention to have carnal knowledge of the female forcibly and against her will. There must be an intention to use such force as may be necessary to accomplish the object. If there was at any time such an intent, the fact that defendant afterward abandoned his purpose would not relieve him from liability. The evidence for the prosecution tended to prove an aggravated assault and most outrageous conduct on the part of the defendant, well deserving of suitable punishment, but it did not show any attempt to do the act which would have been rape, nor any present intention to do it. The

testimony of Mrs. Gimpel was that he kissed her and besought her with much violence and improper conduct to consent to his proposal, but he made no real attempt, and we do not think it can be said that the evidence proved, beyond a reasonable doubt, an intent to accomplish his purpose without her consent and to use such force as might be necessary to do so. He made no movement whatever toward the actual commission of the crime of rape, and it does not seem from the conduct of Mrs. Gimpel and her husband at the time, that they understood he intended at any time to overcome her regardless of her consent. The intent to commit rape must appear to warrant a conviction, and it was necessary to prove, beyond a reasonable doubt, that the defendant, in making the assault, intended to have carnal knowledge of Mrs. Gimpel notwithstanding any resistance on her part.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*