**People of the State of Illinois, Plaintiff-Appellee, v. Claude W. Otkins, Defendant-Appellant.**

**Gen. No. 52,253.**

First District, Fourth Division.

September 17, 1969.

Rehearing denied October 29, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Defendant was found guilty by a jury of attempt to commit rape. Judgment was entered and he was sentenced to a term of six to fourteen years. Appellant raises three points on appeal: (1) he was not proven guilty beyond a reasonable doubt because neither specific intent to commit rape nor a substantial step toward the commission of rape was proven; (2) the trial judge refused to give an instruction tendered by defendant covering certain items not covered in other instructions; (3) he was denied a fair trial because the prosecutor questioned him about his prior felony conviction.

EVIDENCE

Testimony of Complaining Witness:

On February 8, 1966, she was a student at the University of Chicago, working for her Ph.D. in psychology. On that evening she attended a class which ended at 10:30 p. m. and then went to the library in the Psychology Building to do some reading. She left the library alone at about 10:45 intending to catch the University bus. She apparently missed the bus and decided to walk home, a distance of about eight blocks. As she was walking she heard someone running toward her from behind, and she began to run. She wasn't quick enough and a man jumped onto her. She dropped her purse and briefcase at the moment of attack. She began struggling with him, and screamed for help. Several people came out of their houses but then returned without helping her when her attacker told the people that she was his wife.

The man with whom she was struggling was the defendant. He dragged her in the direction of a townhouse that was under construction at 5203 University. She struggled all the way, but she did not scream again. He shoved her through a doorway leading to the basement

of the townhouse, but there were no stairs and she fell into the basement; he fell after her. He pushed her against the wall and told her to keep quiet. He put his hands around her neck and began to choke her. She told him that she had $10 in her purse and that he could have it. He then said something like, "At first I wanted your money, but now I want you." She thinks he said this twice, once on the street and once in the basement. Defendant held her in the basement for about five minutes choking her; she tried to scream again but could not because she was being choked and she was having trouble getting her breath.

The police came and jumped into the basement. Defendant's hands were on her neck until the police arrived. There were quite a few policemen; Mr. Arthur Howard and Mr. Irvin were among them. Defendant never left her sight from the instant he attacked her to the time the police arrived. She had quite a few scratches and bruises mainly on her legs; she had a scar around her neck where defendant's hands had been pressing. Her blouse was torn and her slip somewhat torn.

Defendant did not grab her purse nor did he touch any intimate parts of her body. He did not attempt to cover her mouth with his hands or to cut off her cries. He did not try to kiss her. His body was about six inches from hers when they were in the basement; his body was not touching hers. He never tried to raise her dress.

She walked from 55th to 52nd Street along University; she was not walking with defendant. She does not remember defendant telling the police that she had his $10 bill. She did not state that she had a $10 bill in her purse. She had a $10 bill but spent some of it. She does not recall defendant telling the police to look in her purse. She never took money from defendant.

Testimony of Art Howard, called by the State:

He is an officer on the Chicago Police Department and was so employed on February 8, 1966. At about 11:00

442

p. m. that day he was patrolling in the vicinity of 52nd and University when he heard the screams of a woman. He was in a two-man squad car. He stopped in front of 5215 University. He heard the scream again and at that time there was a radio call about a woman screaming for help in the area. He got out of the car and went into 5213 University from where he thought the screams were emanating. He then heard another muffled scream and went to the 5215 building, a townhouse under construction. He shined his light into the basement of the building and saw two people against the east wall of the basement. Defendant had both hands around the complaining witness' neck with the thumbs to the throat.

At that time defendant released the woman and ran toward the light. The officer said, "Where are you? We are police officers." Defendant then ran over towards the wall, which had a narrow little window. Then he just stopped. Defendant said, "All I want is my money back."

He asked defendant why he was holding the woman in the building. Defendant stated that he was trying to get his money back from her. Defendant said that he had paid her for sexual intercourse; he said that he dragged her into the basement to get her off the street.

None of the police officers examined complaining witness' purse to see if it contained $10.

When the police officer first put his light on the complaining witness she was flushed. She did not say anything; she was hysterical; she was trembling all over. He did not at any time see defendant's hands any place on the complaining witness' body except her neck.

Testimony of Claude W. Otkins, defendant:

He lives at 5535 South Drexel with his wife and daughter; he is twenty-six.

At about 11:00 p. m. on February 8, 1966, he left his house to get some cigarettes. He had about $115 in his pocket which was from a delayed vacation check from U. S. Steel; he had cashed the check earlier in the day at

a currency exchange at 75th and Halsted. He walked east on the north side of 55th for three blocks until he got to University; he was going to Kimbark Shopping Center at 53rd and Kimbark. He came into contact with complaining witness at the corner of 55th and University; they arrived at a large puddle simultaneously and he stepped back to let her cross first. She said, "Thank you."

Complaining witness slowed down after crossing the puddle and he caught up to her. She mentioned something about the weather, and defendant agreed with her. They continued to walk together. They walked together all the way to 53rd; they talked as they walked. She said that she did not feel like going home, and he asked her to have some drinks with him. They discussed it, and then he gave her $10. She asked what his intentions were. He said that he did not know, but that he was sorry if he had offended her. She said that he had not offended her, but she would like him to explain his actions. He said, "Well, I'm sorry. If there's something I have done wrong in giving you this. . . . Well, then forget it and we can just, you know, part, because I was only going to get cigarettes anyway."

She did not return the $10. She then said that they could go to her apartment, which was a couple of blocks away, but she did not mention the address. They had just arrived at the corner of 53rd Street and cars were coming, so he stepped back onto the curb to let the cars pass, but she kept going. He called to her but she kept going. He caught up with her about two houses down the street. He grabbed her by the arm and asked her what she was doing. He said that if she wanted to change her mind, okay, but he wanted his money back. At that time she grabbed his arm and began struggling and hollering. Somebody asked what the trouble was and he said that he was going to get his money back. He had a hold on her arm, but he released her and told her that he only wanted

his money. During the struggle they fell and that is when his hold on her was broken. They both got up and she began to run. He caught her in front of a townhouse and grabbed her around the wrists again. They both fell into the basement. He helped her up and then she grabbed him by the lapels and said, "Please don't hurt me." He said, "I'm not trying to hurt you. All I want, lady, is my money." She said, "Well, I haven't got it on me. Your money is in my purse." She said that her purse fell when they started to fight. He asked, "Why didn't you give it to me when I first asked you?" She said, "You didn't give me a chance. I was scared that you were going to hurt me."

At this time there was a light shined into the basement. It was the police. They instructed him to climb out. He told them that he was trying to get his money back from the young lady in the basement. He said, "All you have to do is look in her purse and get my money." No police officer looked in her purse.

During the struggles with complaining witness she was screaming at times, but he did not make any effort to cover her mouth. She never scratched him in the face or hit him. He never choked her. He never had any intention to rape the complaining witness. He had just been paroled for the same crime and he did not want to get in trouble.

OPINION

Defendant first argues that he was not proven guilty beyond a reasonable doubt in that there was insufficient proof of intent to commit rape and insufficient proof of the taking of a "substantial step" towards the commission of rape.

The crime of "Attempt" is specifically defined in the Criminal Code, Ill Rev Stats 1965, c 38, § 8–4(a):

> A person commits an attempt when, with intent to commit a specific offense, he does any act which

445

constitutes a substantial step toward the commission of that offense.

In the instant case the jury was presented with two inconsistent versions of the occurrences of the night in question. It is clear that the jury believed the account offered by the complaining witness, but defendant argues that her testimony does not show that he intended to commit rape.*

It is well established that when intent to commit a specific crime is not admitted it can only be shown by surrounding circumstances because intent is a state of mind. People v. Coolidge, 26 Ill2d 533, 187 NE2d 694. Defendant argues that since it is admitted that he never struck or hit the complaining witness, never attempted to throw her to the ground, never attempted to kiss her, never touched any intimate part of her body, never attempted to lift her dress, never pressed his body against hers, and never exposed himself to her, there is no basis for finding that he intended to rape her, citing People v. Bush, 19 Ill2d 151, 166 NE2d 91.

However, in both Coolidge and Bush the court stated that if an accused admits or articulates his intent to commit a specific crime, that is sufficient to sustain a conviction under the "attempt" statute. In the instant case there was an articulation by defendant of his intent. Complaining witness testified that twice defendant said something like, "[a]t first I wanted your money, but now I want you." Defendant disparages this evidence, arguing that the witness was not sure of what was said.

---

* Ill Rev Stats 1965, c 38, § 11-1:

(a) A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape.

. . . . . .

(b) Sexual intercourse occurs when there is any penetration of the female sex organ by the male sex organ.

It was for the jury to determine the weight of the evidence. One of the factors to be considered by it was that the witness testified to the substance rather than the exact phraseology of defendant's remark. The jury could find from defendant's statement and the other circumstances that he intended rape.

■ Defendant also argues that he was not sufficiently proven to have taken a "substantial step" towards the commission of rape. Defendant presses this contention by attempting to show that the complaining witness offered no resistance and thus concludes that there could have been no attempt to rape. This argument is not supported by the evidence. Defendant himself testified that the complaining witness' screaming caused him to try to keep her quiet and alerted some people on the street; the police received a call of a woman screaming on the street; and the police ultimately located defendant and complaining witness by the noise of her screams. The complaining witness testified that she resisted defendant's attempt to drag her to the townhouse and that she sustained a scar on her neck. Defendant admitted that he struggled with her and dragged her. There was adequate evidence of resistance.

■ Further, defendant certainly took a substantial step towards commission of the offense when he attacked her on the street and dragged her into the townhouse basement. His defense that he merely wished to recover his $10 is not borne out by his own testimony. It is unclear whether he claimed that complaining witness put the $10 into her purse or kept it in her hand. However (still according to his own testimony), defendant did not attempt to retrieve the money when she dropped her purse in the street nor did he try to take it from her hand. Instead, he kept dragging her and they fell into the basement where, according to the testimony of the complaining witness and the police, he was choking her.

■ Defendant next argues that the trial judge improperly refused to give the following instruction tendered by him:

> The Court instructs the Jury as a matter of law that if the evidence in this case can be reconciled upon either of two reasonable theories, one pointing to the guilt of the Defendant, and the other pointing to the Defendant's innocence, it is the duty of the Jury to adopt and follow the theory which points to innocence and find the Defendant not guilty.

This instruction is evidently based on the following statement from People v. Magnafichi, 9 Ill2d 169, 173, 137 NE 2d 256:

> To justify a conviction, circumstantial evidence must be of such a nature as to produce a reasonable and moral certainty that the accused committed the crime. Where the circumstances can be explained upon a reasonable hypothesis consistent with innocence and leave a serious and grave doubt of guilt, a conviction cannot stand. People v. Taylor, 410 Ill 469; People v. Widmayer, 402 Ill 143; 15 ILP, Criminal Law, sec 912.

But in the instant case the Magnafichi rule does not apply because the testimony was not limited to circumstantial evidence,* as there was direct evidence of intent, and the jury was therefore required to resolve the credibility of the witnesses rather than determine which theoretical explanation of the circumstances was most plausible. The "reasonable doubt" instruction given by the trial judge was the only proper instruction in the setting of this case, and we find no error in his refusal to give the instruction requested by defendant.

---

* See IPI—Criminal 3.02 and Committee Note

■ Defendant's final contention is that he was denied a fair trial because the prosecutor cross-examined him about his prior felony conviction. The cross-examination amounted to three short questions and only had the effect of repeating facts which defendant's own attorney had elicited from him moments previously. Since the defendant had been the first to mention his prior criminal record and since there was only the single repetition of it by the prosecutor which was quickly halted by objection, we find that there was no prejudice to defendant.

■ Defendant also argues that he was prejudiced by an incident of laughing that occurred at the trial. It appears that the arresting officer was in the courtroom and laughed during the examination of the defendant by his counsel. Counsel called the attention of the court to it, but dropped the matter when the judge stated that he was not aware of anyone having laughed. The fact that the judge did not see or hear the laughing incident is adequate showing that it was very minor indeed, and we can perceive no prejudice to the defendant.

■ From all these circumstances we find that there was sufficient evidence from which the jury could conclude beyond a reasonable doubt that defendant was guilty of an attempt to commit rape. We believe that defendant received a fair trial and was proven guilty beyond a reasonable doubt. Thus the judgment of the trial court is affirmed.

Judgment affirmed.

ENGLISH and McNAMARA, JJ., concur.