THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TED STANLEY, Defendant-Appellant.

(No. 58216;

First District (3rd Division)—July 3, 1974.

James J. Doherty, Public Defender, of Chicago (Susan K. Horn, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Roger L. Horwitz, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

After a trial without a jury, defendant, Ted Stanley, was convicted of attempted rape and sentenced to a term of 1 to 5 years in the Illinois State Penitentiary. On appeal, the only issue presented for review is whether the State proved the defendant guilty beyond a reasonable doubt. We affirm.

The incident herein occurred on Sunday, September 26, 1971. At the time, defendant was a union window washer; complainant was an airline stewardess based in Chicago, living in a sixth floor apartment in a building on the near north side of Chicago. Defendant had on former occasions worked in the building and was acquainted with complainant, having washed her windows in June of that year. On September 26, 1971, complainant had taken a bath, done some housework in her apartment, and washed her hair. She was dressed in a long terry cloth robe. There was a knock on her door at about 2:30 in the afternoon, but she did not answer. Fifteen to 30 minutes later defendant knocked on the door and said he had to remove and measure the window screens. Complainant admitted defendant who spent at least 30 minutes removing the three screens in the apartment. During that time complainant was in the kitchen cooking and washing dishes. One of the screens was located above the side of the bathtub. Defendant began to clean up the mess in the bathtub caused by the dirty screens. Complainant entered the bathroom and told defendant she was in a hurry to leave and that she would clean up the tub later. He went to the kitchen to wash his hands, then returned to the bathroom while complainant was leaning over the tub, and closed the door.

At this point the testimony of complainant and defendant differs. Complainant testified to the following: Defendant entered the room, closed the door behind him and remarked that she had a "nice looking pussy." For a moment she turned and stared at him in surprise. He came toward her and shoved her into the tub as she struggled to get away. She fell into the tub but immediately regained her balance. Defendant, with one hand around her throat, pushed her into the corner and attempted to rip off her robe with his other hand while screaming the following obscenities at her: "You m----- f-----, you dumb m----- f-----, you English whore, I'll f--- you." Defendant ripped her robe. He momentarily released his grip on her throat and pulled what appeared to be a "stick" from his shirt; she kept pulling at his hair and grabbed his hands when he had the stick. Defendant kept screaming obscenities, such as "I want to suck your pussy, I want to bite your tits off, I'm going to strangle you, I'll stab you, I'll stick my knife up your ---." Complainant hung onto his hands and he pushed her away, throwing her across the bathroom

onto the toilet seat near the door. She quickly flung the door open and ran through the apartment, down the back stairs to the fifth floor, and finding no one there, continued to the fourth floor apartment of a friend, Steven Kramer. On cross-examination, complainant testified that although defendant was in close proximity to her he never attempted to open the zipper which ran the length of the front of the robe; that neither she nor the defendant was exposed; and that the entire scuffle lasted approximately 5 minutes. Complainant's robe was received in evidence.

Steven Kramer testified on behalf of the State. On the afternoon in question he was awakened from a nap by a loud banging on his door. When he opened it the complainant was standing there in a hysterical state and told him that the window washer had attacked her and tried to rape her. He then went to complainant's apartment and observed three screens in the hallway and a pot of noodles on the stove. The burner was on and the water had boiled out. Kramer did not see anyone in the apartment. In the bathroom he noticed a blue shirt slung over the side of the tub, a yellow pail that was tipped over, a blue pen on the floor, a knife lying inside the tub, and a muddy substance on the floor.

The knife was identified by complainant as belonging to her, but she could not identify it as being the "stick" defendant had pulled from his shirt. She testified that she was hit about the neck and back of the head, had some minor bruises—"nothing serious"—and was treated by the flight surgeon at the airline. The doctor was not called to testify.

Defendant testified in his own behalf as follows: When he entered the bathroom and stared at complainant, she turned and asked if he liked what he saw. In response, he said that he would "eat it." Complainant went wild and began hitting him. He grabbed her wrists but she kept hitting him. He said he wanted to leave and take his tools with him. He further testified that he used obscene language after complainant struck him. He did not strike her or put his hand around her neck. He was first to leave the bathroom and she ran past him. He did not tear her robe but it tore while she was hitting him. The entire incident in the bathroom lasted no more than two minutes. Defendant also testified that his window washing was a spare-time job and that he was a weight-lifter capable of lifting over 200 pounds in a bench press position.

On October 3, 1971, defendant was arrested in his home. The arresting officer testified that at the time, defendant admitted being in complainant's apartment on September 26, 1971, and stated further that after he had made obscene remarks to her complainant became angry and a struggle ensued.

One of the arguments presented by defendant on appeal is that he cannot be presumed guilty of the crime of attempted rape because the

conditions can be explained by an innocent hypothesis. In support, defendant cites and relies upon *People v. Benson* (1960), 19 Ill.2d 50, 166 N.E.2d 80, where the defendant was charged with rape and murder. He was found having intercourse with the decedent, a stroke victim. The cause of death was attributed to a cerebral hemorrhage. The Illinois Supreme Court reversed the rape and murder convictions because there was insufficient evidence to establish that the cause of death was due to involuntary intercourse. In the *instant case*, defendant submits that the "conditions" may be explained by an innocent hypothesis: the provocative attire of the complainant, the misinterpretation of her silence as acquiescence; defendant's assault and abusive language as a reaction to her use of force; and the absence of medical testimony as to complainant's physical injury.

██ Defendant's reliance upon the "innocent hypothesis rule" as stated in *People v. Benson, supra,* is misplaced. *Benson* and its progeny are distinguishable from the instant case, where both complainant and defendant testified, each as to his or her version of the events which took place in the bathroom. The "innocent hypothesis rule" does not require the trier of fact to presume innocence in such a case. The rule may be applied, as in *Benson,* where there is a lack of positive evidence as to the cause of injury, but not in a situation where guilt may be predicated upon the testimony of the complaining witness and where the defendant offers a contradictory set of facts supporting his innocence. In the latter case, the determination of guilt or innocence depends upon the credibility of each witness' testimony.

The main thrust of defendant's argument on appeal is that the State failed to prove beyond a reasonable doubt that he had the specific intent to carnally know complainant and also failed to prove that defendant performed a substantial step toward carnally knowing her.

██ It has been stated that a reviewing court will not disturb a verdict or reverse a judgment of conviction on the ground that the evidence is insufficient to sustain a conviction "unless the verdict is palpably contrary to the weight of the evidence, or the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. McKinnie* (1928), 328 Ill. 631, 640, 160 N.E. 121.

●█ The question before us is not whether the evidence of the complainant is sufficient to sustain a conviction, but whether her testimony is sufficiently credible to warrant a conviction. In *People v. Stagg* (1963), 29 Ill.2d 415, 421, 194 N.E.2d 342, the court held that "the testimony of the prosecutrix alone, if clear and convincing or if substantially corroborated by some other fact, evidence or circumstance, is sufficient to con-

vict." The court further stated at page 421 that "where, as here, the testimony of the prosecutrix alone is relied upon for a conviction, that testimony must be clear and convincing, and if it has been impeached, is inherently improbable, or is such that reasonable minds could not believe it, the conviction must be reversed."

In the case before us the testimony of complainant is clear and convincing, has not been impeached, and is not inherently improbable. Furthermore, her testimony has been corroborated in part by that of Kramer. We cannot say that complainant's testimony is such that reasonable minds could not believe it.

■■ In *People v. Stagg, supra,* at page 417, the court held that to constitute the offense, the defendant "(1) must be guilty of assault, (2) have an intent to have carnal knowledge of the female, and (3) have a purpose to carry this intent into effect by means of force and against the will of the female." Defendant argues that there is no proof that he performed a substantial step toward carnally knowing complainant. However, when an assault and battery is coupled with the requisite intent, that is sufficient to prove that a substantial step has been taken to commit the offense of attempted rape. In *People v. Otkins* (1969), 114 Ill.App.2d 439, 252 N.E.2d 906, the defendant was charged with the offense of attempted rape. The prosecutrix testified that the defendant jumped onto her from behind when she was walking on the sidewalk; that he told bystanders she was his wife; that he dragged her to the basement of a building under construction, and that while choking her, he said, "At first I wanted your money, but now I want you." The prosecutrix further testified that the defendant did not touch any intimate parts of her body, that he did not try to kiss her, that his body was about six inches from hers but not touching, and that he never tried to raise her dress. The court found that the trier of fact could find from defendant's statement and the other circumstances that he intended rape and that there was adequate evidence at the prosecutrix's resistance to sustain the conviction.

In the instant case defendant articulated his intention, and he admitted that he did use obscene language. Such an articulation of his intent to commit a specific crime is sufficient to sustain a conviction under the attempt statute. (*People v. Otkins* (1969), 114 Ill.App.2d 439, 446, 252 N.E.2d 906; *People v. Coolidge* (1963), 26 Ill.2d 533, 187 N.E.2d 694; *People v. Bush* (1960), 19 Ill.2d 151, 166 N.E.2d 91.) In *People v. Mayer* (1945), 392 Ill. 257, 259, 64 N.E.2d 372, the court held that "The intent to rape may become manifest from words, actions, violence or other conduct." In the case before us, defendant violently attacked complainant after closing the bathroom door. A fight ensued for several

minutes. Complainant testified that she sustained minor injuries, and that she resisted defendant's efforts and successfuly escaped from her apartment. "[T]he mere fact the victim successfully frustrates the purpose does not establish a lack of criminal intent upon the part of the assailant." *People v. Mayer* (1946), 392 Ill. 257, 260, 64 N.E.2d 372, 373.

■■ Therefore, in the instant case, the trier of fact could have found, from the testimony and other circumstances, that the defendant possessed the requisite intent and performed a substantial step toward carnally knowing the complainant. The facts in the case are unlike those in *Franey v. People* (1904), 210 Ill. 206, 71 N.E. 443, where the testimony of the prosecutrix revealed that the defendant made no real attempt to rape. (See also *Newman v. People* (1906), 223 Ill. 324, 79 N.E. 80.) In *People v. Richardson* (1960), 18 Ill.2d 329, 164 N.E.2d 61, a conviction for attempted rape was reversed because the testimony of the prosecutrix was not clear and convincing and lacked sufficient corroboration. Here, the testimony of complainant was not implausible and was corroborated in part by the testimony of Kramer. Her testimony was not impeached and was in fact corroborated in part by that of the defendant.

' We hold that the facts admit of sufficient evidence to sustain the conviction, and the judgment is not palpably contrary to the weight of the evidence, nor is the evidence so unreasonable, improbable or unsatisfactory to justify a reasonable doubt of defendant's guilt.

From all these circumstances we find that there was sufficient evidence from which the trier of fact could conclude beyond a reasonable doubt that defendant was guilty of an attempt to commit rape. The judgment is therefore affirmed.

Affirmed.

DEMPSEY and McGLOON, JJ., concur.