(No. 35488.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DARRELL BUSH, Plaintiff in Error.

*Opinion filed March 31, 1960.*

CHESTER THOMSON, RALPH SCHROEDER, and JOHN W. BIGGERS, all of Bloomington, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and HARRY R. STEVENS, State's Attorney, of Clinton, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Darrell Bush, the defendant, was indicted by the grand jury of DeWitt County, at the September term, 1958, for the crime of assault with intent to commit rape, and the crime of assault to commit a lewd and lascivious act. After trial before the court, a jury having been waived, he was found guilty of the crime of assault with intent to commit rape, and sentenced to the penitentiary for a term of one to five years. It is from this conviction that defendant prosecutes this appeal.

Upon the trial, the complaining witness, who was 16 years old at the time of the occurrence, testified as follows: On the evening of June 7, 1958, she was baby sitting for the three children of Wanda McKee. She saw the defendant early that evening at the McKee apartment, and had seen him there on other occasions. When Wanda McKee returned about one o'clock she told complainant the defendant would drive her home. She got in the car in the right front seat, and they went to a drive-in for a cup of coffee and a milk shake, over her objections. He then drove east on Route 54 and did not turn to go to her home. He drove into the country and stopped. She said she tried to get out of the car but he grabbed her causing her to spill her milk-shake. He drove on and then stopped again, asked her if she had ever been kissed, kissed her and tried to reach under her blouse but she pushed his hand away. His hand was by her jeans. She told him she did not want

his hand there, and he kissed her again and said he was going to have intercourse with her. She jumped out of the car, but he held on to her and told her to get back in. She refused and she says he told her to get out and pushed her, she screamed and he put his hand over her mouth. He then let go and told her to get back in, she pushed him and ran. He tried to follow her and fell. She ran through a field to a farm house and knocked on the door, but no one answered, so she ran through the fields to another house, where she told the occupants someone was after her. She called her mother, and her father came after her. She said she told her father what defendant said he was going to do to her. Upon cross-examination the complainant stated that the defendant never got his hand under her blouse, and never felt of her legs or her privates. He at no time slapped her, and she had no trouble holding on to his hand to keep it away from her body. He never pulled at his zipper, never exposed himself, and never tried to pull her jeans down.

Mr. and Mrs. George Davenport testified the complainant came to their home about two-thirty in the morning, very excited, and said she was trying to get away from a man. Mrs. Davenport said she claimed the man was trying to kill her. She called her parents who came for her.

Upon arriving home she told her mother what the defendant had attempted, and that he had kissed her several times.

Complainant's father went to get her after receiving her call. He found her crying and hysterical, and said she did not talk on the way home. At home she told them what had happened and what the defendant said.

The defendant, who was 29 years of age, related that complainant got in his car at Wanda McKee's apartment. He asked her if she cared for a cup of coffee but she said no, and said she had to get up early. He, however, stopped at a drive-in but curb service had stopped. He then drove

on until she said she could have gone in and got coffee,— so he turned around and went back. She got the coffee and a milk shake. He started out on the highway and she said she wanted to go home. He drove on into the country, stopped, and kissed her. She spilled her milk shake, and he then realized she was scared. He denied ever mentioning intercourse to her. He drove on and stopped again, where-upon she got out and ran. The defendant denied that he chased her, or that he put his hand beneath her blouse.

We are fully aware of the axiom, often expressed by this court, that sex offenses are easy to charge, hard to prove, and harder to defend. Nevertheless, we are charged with the duty to review convictions of such crimes upon appeal, and determine whether such convictions are con-sonant with the law and the evidence.

This defendant is convicted of the crime of assault with intent to commit rape. The essential elements of the crime are specific intent so to do and an assault of such nature as would amount to rape if the purpose of the assault had been accomplished. (*People* v. *Liechron,* 384 Ill. 613.) The gist of the offense is the specific intent charged. (*People* v. *Marino,* 388 Ill. 203; *People* v. *Cies-lak,* 319 Ill. 221.) An indecent assault, however aggra-vated, will not warrant a conviction of assault with intent to commit rape, without proof of an intention to have intercourse with a woman by force and against her will. (*People* v. *Hiller,* 7 Ill.2d 465; *Newman* v. *People,* 223 Ill. 324.) That intent need not be an express one, and it may be inferred from the acts of the accused and the circumstances of the assault, as well as from express words. *People* v. *Hiller,* 7 Ill.2d 465; *People* v. *Marino,* 388 Ill. 203.

The complainant here asserts that defendant said he was going to have sexual intercourse with her. She made no such claim to the people into whose home she was admitted. She there claimed she was trying to get away from a man

who wanted to kill her. Her father denies that she made any such claim to him on the way to her home. At her home, she did make such a statement to her parents. The defendant denies that he said any such thing. Moreover, such statement does not indicate, of itself alone, an intention to have intercourse with her against her will.

The only assault manifest by the evidence is that defendant had his arm about the complainant, that he kissed her, that he held her arm to keep her from jumping out of the car, that his hand touched her blouse, and that he put his hand over her mouth when she tried to scream. She testified he did not strike her, that he never touched her body or felt her legs or privates, that he never exposed himself or removed any clothing, that she had no difficulty in holding his hand away from her. Defendant made no forceful advances, nor was his language threatening or harsh. The most that the evidence discloses is an amorous advance, a frightened girl, and a foolish man. The most revolting fact is the disparity of ages between a 16-year-old girl and a 29-year-old man.

None of the alleged acts of the defendant indicate an intention to have carnal knowledge of the complainant against her will with force or violence. His conduct was improper, but neither the acts, circumstances or words manifest an intent upon which this conviction may rest. (*Franey* v. *People,* 210 Ill. 206; *Newman* v. *People,* 223 Ill. 324.) The evidence is not convincing, beyond a reasonable doubt, that defendant intended to compel her to submit to him whether she was willing or not. The law compels us to reverse this judgment of conviction.

The judgment of the circuit court of DeWitt County is reversed.

*Judgment reversed.*