The People of the State of Illinois, Plaintiff-Appellee, v.
Phillip Moore, Defendant-Appellant.

Gen. No. 50,191.

First District, Third Division.

November 17, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. Roger Horsky, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The defendant, Phillip Moore, who was convicted of attempt with intent to rape in a nonjury trial and sentenced to five to ten years in the penitentiary, contends in this appeal that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt and that, at best, the evidence would only sustain a finding of assault, not of attempt with intent to commit rape.

The complaining witness testified that on a rainy morning, April 27, 1964, she spent an hour in a tavern near Wilson Avenue and Sheridan Road, Chicago. She entered the tavern about 9:00 a. m., had three or four drinks of whiskey, played the jukebox, petted the bartender's dog and otherwise amused herself. When she left, the defendant, whom she had seen in the tavern but whom she did not know, followed her. He crossed the street behind her and after a few words about having some "booze" she would like, grabbed her by the throat and dragged her into a gangway. He ripped her raincoat, tore the buttons from her sweater, ripped her dress to pieces, snatched at her breasts and said: "You're going to give me some or I'll kill you." She said she

63

struggled with him, struck him with everything she had including her shoe and kicked his legs.

She escaped from him and screamed for help. A half block away she came upon a patrolling police car. The officer halted his car and went to her assistance. He testified that her dress and sweater were torn, that she was wearing only one shoe, that she was hysterical and had been drinking. She told him that a man had just tried to rape her and she led the officer to the gangway. A large bay of an adjoining building hung over the gangway; under the bay there were four or five steps which went down to the door of a wooden enclosure leading to the basement. In the enclosure he found her coat which was torn to shreds, one of her shoes, a couple of paperback books which belonged to her and two letters which bore the return address of the defendant.

Other officers were summoned. The officers and the complaining witness went to the address which was on the envelopes. The defendant was there and the complainant identified him. He admitted that the letters were his and said he thought he had mailed them. He denied assaulting the woman but said that he had seen her in the tavern that morning. He told the officers that he did not talk to her or have anything to do with her. His shins had fresh abrasions upon them; he did not know how they became bruised. He was placed under arrest and he and the complaining witness were taken to a police station. On the way there the defendant maintained his innocence and repeated that he had never spoken to her in the tavern.

At his trial he told a different story. He testified that the rain prevented him from working as a roofer the morning of April 27th and after reporting for work he went to the tavern and was there when the complaining witness entered. He said she asked him to buy her a drink, that he bought her three and gave her money

to play the jukebox. After playing some records she returned to the bar where he was drinking beer, hugged him and took two letters from his pocket. (On cross-examination he said he did nothing to get the letters back and, when pressed, said he did not know that she had taken the letters but that "she must have.") According to the defendant she suggested that they go to a hotel. He replied that he was not interested and got up to leave; she followed him out of the door and held his jacket. He pulled loose and crossed the street but she came after him and again hung on to his jacket. He jerked away and as he did so she fell to the sidewalk and one of her shoes came off. He left her lying on the walk and went to his apartment which was a half block away.

■ Section 8–4(a) of the Criminal Code of 1961 (Ill Rev Stats, c 38, § 8–4(a) (1963)) provides: "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." Section 11–1 of the same Code states that a male person commits rape when he has sexual intercourse with a female, not his wife, by force and against her will. An attempt with intent to rape includes every element of the crime of rape except penetration. To commit this offense the male person must have an intent to have carnal knowledge of the female and the purpose of carrying out this intent by means of force and against her will, and must take a substantial step toward accomplishing his purpose. People v. Stagg, 29 Ill2d 415, 194 NE2d 342 (1963).

Section 4–4 of the Criminal Code defines intent as follows:

> "A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when

his conscious objective or purpose is to accomplish that result or engage in that conduct."

Intent is a state of mind and if it is not admitted it can be shown only by surrounding circumstances. People v. Coolidge, 26 Ill2d 533, 187 NE2d 694 (1963). An intent to commit rape need not be expressed. People v. Bush, 19 Ill2d 151, 166 NE2d 91 (1960). It may be inferred from the conduct of the accused, the character of the assault, the words spoken, the acts done and the time and the place of the occurrence.

■ In a prosecution for the offense of attempt with the intent to rape, the testimony of the complainant alone, if clear and convincing or if substantially corroborated by some other fact, evidence or circumstance, is sufficient to convict. People v. Stagg, supra.

■ Although the complainant had been drinking her testimony at the trial was not only convincing, it was corroborated in many respects: by her immediate complaint that a rape had been attempted, her disheveled appearance, her hysteria, her torn clothing, her scattered belongings, the defendant's flight, his letters, the bruises upon his legs and his statements to the arresting officer which differed from his testimony at the trial. The issue, therefore, is whether her testimony and the evidence supporting it were sufficient to prove the crime charged. An indecent assault, however aggravated, will not warrant a conviction of attempt with intent to rape without proof of an intention to have intercourse by force and against the will of a woman. People v. Hiller, 7 Ill2d 465, 131 NE2d 25 (1955) ; People v. Jenkins, 342 Ill 238, 174 NE 30 (1930).

■ Despite the fact that the initial assault took place in daylight and on a public street the intention behind it can be inferred from the acts of the defendant. His purpose was not money; he did not snatch her

66

pocketbook when he accosted her nor attempt to rob her later. He seized the complainant by the throat and dragged her to a place of concealment. There, away from passersby, he tried to overcome her resistance by force. He did not desist when she fought him off. He kept mauling her when she hit him with the few things she had at hand: her purse, her books, her shoe. His was not just an amorous advance. He did not claw at her clothing just to kiss her lips; he did not threaten to kill her just to feel her breasts. By his demand that she give him "some" it is clear what he meant and he took substantial steps toward obtaining it. If his purpose had been accomplished he would have raped his victim.

The testimony of the prosecuting witness and the attendant circumstances establish the elements of the offense for which the defendant was indicted and his conviction will be affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.