(No. 42113.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* FRANK TRIPLETT, Appellant.

*Opinion filed September 22, 1970.*

GERALD W. GETTY, Public Defender, of Chicago, (HAROLD A. COWEN, THEODORE A. GOTTFRIED, and JAMES J. DOHERTY, Assistant Public Defenders, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney of Chicago,

(JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and DONALD N. NOVELLE, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant Frank Triplett was convicted of attempted rape in a 1968 Cook County circuit court jury trial, and was sentenced to a term of four to ten years imprisonment. In this direct appeal, he questions the admissibility of the complaining witness's in-court identification and also claims that he was not proved guilty beyond a reasonable doubt; particularly, that the State failed to prove the essential element of intent to commit rape.

The complaining witness first testified in the course of a pretrial hearing on defendant's motion to suppress her in-court identification, and, following a denial of the motion, she testified at trial. She stated that a Negro youth appeared at her second floor apartment at about 2:00 P.M. on October 18, 1967, and said he was collecting for her newspaper subscription. She explained that she did not take the newspaper, and the young man then left for a short time. He returned with a phone number for her to call to discuss the mixup; she made the call but it was not the newspaper office. The young man left again, ostensibly to check the number with his supervisor downstairs. He returned to tell her the supervisor would be up to talk with her shortly, and then he began to leave. The complainant left the door ajar and had returned to her housework when she heard her infant daughter scream. She turned and saw the young man holding the baby with a broken bottle at her face. He told complainant to take off her clothes or he would cut the baby. When the complainant objected, he threatened "you know I can use this baby too." She moved quickly toward him, and he fled. She became hysterical, but managed to call the police a short time later. When two uniformed officers arrived,

she gave a description of the young man, and was taken to a nearby hospital. As she entered the hospital waiting room with the two officers, she saw the intruder and identified him. He was then in the custody of two plainclothes officers. She also saw him shortly thereafter at the police station. Defendant was brought before her in court, and she again identified him as the intruder. She stated that she would have recognized defendant in court without having seen him at the hospital or the police station.

Defendant and three friends testified to an alibi, claiming they had been riding the elevated trains and eating lunch at the time in question. In rebuttal, the State presented the testimony of a woman who stated that defendant had attacked her in her apartment during the time he claimed to be with his friends. The judge instructed her not to recite the details of the occurrence, but the defense urged the court to let her proceed, saying the jury ought to hear her full story. She then revealed that defendant had threatened her baby with an iron bar and a scissors, and had said that if she refused to submit to intercourse, he could use the baby. She submitted, after which defendant removed over twenty dollars in coins from her piggy bank and fled. When the State examined the police officer who inventoried defendant's belongings after his arrest, the defense successfully objected to questioning about items other than clothing taken from him. The defense stipulated that defendant's fingerprints appeared on the piggy bank, but defendant claimed he had handled the bank at the police station. A police lab technician rebutted this explanation, however, stating that he had taken the bank directly from the apartment to the lab, where he discovered the prints.

The arresting officers testified they spotted defendant while looking for a young Negro male fitting the description given by the rape victim. He fit the description as to height, weight and clothing, and fled as they approached him. They gave chase, and defendant was hit by a car as he ran across

La Salle Street. They caught him and took him to the nearby hospital for treatment and examination. He had been treated for a cut when the complainant was brought in for treatment, and the confrontation was entirely coincidental. One of the officers who brought complainant to the hospital also stated that the confrontation was unplanned.

The defendant argues on appeal that his alibi, supported by three witnesses, established reasonable doubt as to his guilt. However, the credibility of witnesses is a matter for the trier of fact; if believed, the positive testimony of the complainant and the testimony presented to rebut the alibi are sufficient to remove all reasonable doubt. (*People* v. *Gray,* 33 Ill.2d 349; *People* v. *Carpenter,* 28 Ill.2d 116; *People* v. *Solomon,* 24 Ill.2d 586.) Defendant argues further that there was no proof of an intent to commit rape, since it was not shown that he explicitly stated such an intention to the complainant. While proof of the specific intent to commit rape is essential, intent may be inferred from the circumstances of an assault. (*People* v. *Hiller,* 7 Ill.2d 465 ; *People* v. *Marino,* 388 Ill. 203 ; *People* v. *Garafola,* 369 Ill. 232.) The jury could reasonably conclude that defendant's threat to "use" complainant's infant daughter if complainant refused to co-operate, was indicative of an intention to have intercourse. This conclusion was reinforced by the testimony of the State's rebuttal witness, that defendant raped her following her submission to a similar threat. Defendant suggests on appeal that this testimony as to a previous crime was improper. However, there was no objection at trial; in fact, when the court limited her testimony to rebuttal of defendant's alibi, it was at the urging of the defense that she was permitted to amplify upon the circumstances of the rape. We conclude there was ample evidence properly before the jury to prove beyond a reasonable doubt that defendant acted with the intention of committing the crime of rape.

Defendant contends that the complainant's in-court

identification of defendant was improperly allowed, since she had previously viewed him at the hospital and at the police station in unnecessarily suggestive circumstances, at which times defendant was without counsel. The State replies that the hospital confrontation was entirely coincidental, and therefore there was no "show-up" as proscribed by the *Wade, Gilbert* and *Stovall* decisions. (*United States* v. *Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert* v. *California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.) It is also suggested that the confrontation would have been justified even if planned, since prompt identification was necessary to determine whether an immediate and exhaustive search for complainant's assailant should be undertaken. (*People* v. *Young, ante* at p. 82; *People* v. *McMath,* 45 Ill.2d 33, 36; see also, *Bates* v. *United States* (D.C. cir. 1968), 405 F.2d 1104.) This exception to the *Stovall* doctrine is also urged as a valid exception to the stricter requirements of *Wade-Gilbert.* (See, *e.g., Russell* v. *United States* (D.C. cir. 1969), 408 F.2d 1280, *cert.* denied 395 U.S. 928, 23 L. Ed. 2d 245, 89 S. Ct. 1786; *United States* v. *Davis* (2d cir. 1968), 399 F.2d 948, *cert.* denied 393 U.S. 987.) However, appropriate as these observations may be, they are no answer for the later confrontation at the police station.

We might well conclude that the hospital identification was entirely coincidental and spontaneous since all the evidence and testimony points to that conclusion, and only sheer speculation suggests otherwise. In that event, the identification would be an ideal one, unquestionably free of the suggestiveness to which the *Stovall* doctrine is directed. The subsequent police station confrontation would not appear to be significant under *Stovall,* following such a positive prior identification. And, in any event, the ultimate question posed by the United States Supreme Court in the *Wade-Gilbert-Stovall* decisions, whether the in-court identi-

fication was reliably predicated upon an observation independent of the challenged in-custody confrontations, was resolved by the hearing on defendant's motion to suppress the identification. The complainant there related the circumstances in which she first encountered the defendant. It is clear that she had an excellent opportunity to observe him at her home, and form an accurate, reliable basis for subsequent identification. When she next saw defendant at the hospital, without any expectation that she would confront him there, she identified him unhesitatingly and spontaneously. Furthermore, she was confident that she would be able to identify defendant on the basis of the 15-20 minute observation at her home, even if she had not seen him briefly on the two subsequent occasions. We note also that her initial description of the intruder to the police conformed in every respect with his appearance when arrested. The only reasonable conclusion, based upon all these factors, is that the in-court identification stemmed from an origin independent of the in-custody confrontations. The identification clearly satisfies the ultimate constitutional requirements for admissibility.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*