THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROY L. HAMIL, Defendant-Appellant.

(Nos. 58879, 59325 cons.;

First District (1st Division)—June 3, 1974.

902

Paul Bradley, of the State Appellate Defender's Office, of Chicago, and Clinton R. Batterton, Senior Law Student, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Dennis J. O'Hara, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

We have here appeals in two separate and yet related proceedings involving the same individual and they have been consolidated on his motion.

## No. 58879

In No. 58879, Roy Lee Hamil, who was then under indictment for rape, attempt rape, robbery, etc., involving four females, two of them under age, was charged in a petition filed in 1966 in those cases, with being a "sexually dangerous person" under "An Act relating to sexually dangerous persons and providing for their commitment, detention and supervision," approved July 6, 1938, as amended (Ill. Rev. Stat. 1965, ch. 38, §§ 105—1 through 105—12). After a full scale hearing in which he was represented by private counsel, he was adjudged to be such a person and was committed to the custody of the Director of Public Safety "until he has recovered." The said criminal charges were stricken with leave to reinstate. No contention was made in that proceeding that the statute under which he was so committed was unconstitutional. In August of 1968, after treatment at the Elgin State Hospital, he was given another hearing in the Criminal Court and was given a "conditional release" from his said commitment.

On December 2, 1971, Hamil was involved in another sexual incident which will be more fully discussed under the second appeal (No. 59325). Suffice it to say here that he was indicted for the attempt rape and aggravated kidnaping of Loretta Lingle, was found guilty as charged on May 25, 1972, by Judge Louis B. Garippo and was sentenced to serve 3 to 14 years.

Meanwhile, in January of 1972, a petition had been filed in the earlier cases alleging that Hamil had been so arrested and charged and seeking the entry of an order revoking his 1968 conditional release and recommitting him under the 1966 adjudication and commitment. Testimony by Miss Lingle and others, including Hamil, was taken before Judge Joseph A. Power on January 21, 1972, and the matter was then continued from time to time until May 31, 1972, when the findings and sentence above described were reported to Judge Power and Hamil testified further to his version of the Lingle incident. At the conclusion of said hearing, Judge Power revoked his conditional release and ordered him recommitted.

During this proceeding Hamil was represented by the same private attorney who had represented him in the 1966 proceedings and in the 1972 criminal trial. No contention was made during said hearings that

the statute ("* * * relating to sexually dangerous persons * * *") under which he had been committed was unconstitutional.

Thereafter the Public Defender of Cook County substituted as Hamil's attorney and on August 11, 1972, appealed from the May 31, 1972, judgment that he was "guilty of violation of conditioned release as a sexually dangerous person."

In November of 1973, the Office of the State Appellate Defender filed its brief in this court in these consolidated cases and, in addition to four other grounds for reversing the said 1972 revocation of Hamil's 1968 "conditional discharge" from his 1966 adjudication and commitment as a "sexually dangerous person," for the first time challenged the constitutionality of the statute under which he had been so adjudicated and committed. In December of 1973, the People filed a confession of error in Case No. 58879 and on January 4, 1974, this court reversed, and, as a result, the People's brief does not, other than mentioning said confession and reversal, deal further with this case.

On the oral argument, however, the office of the State Appellate Defender argued orally that its Point I (being a full scale constitutional attack on said statute) survived said confession and reversal; and we have read their brief in this case.

■■ No such attack was made in 1966, 1968 or 1972 or at any other time in the trial court and we hold that it cannot be made here for the first time. See *People v. Amerman* (1971), 50 Ill.2d 196, 279 N.E.2d 353, citing *People v. Allen* (1959), 17 Ill.2d 55, 61, 160 N.E.2d 818; *People v. Brand* (1953), 415 Ill. 329, 337, 114 N.E.2d 370; *People v. Luckey* (1969), 42 Ill.2d 115, 117, 245 N.E.2d 769; and *Van Meter v. Stout* (1970), 45 Ill.2d 7, 9-10, 256 N.E.2d 784; Also, citing *Amerman*, see *Jarvis v. Herrin City Park Dist.* (1972), 6 Ill.App.3d 516, 520, 285 N.E. 2d 564.

*Grasso v. Kucharski* (1968), 93 Ill.App.2d 233, 236 N.E.2d 262; *Rau v. Village of Warrenburg* (1939), 302 Ill.App. 37, 23 N.E.2d 371 (abstract opinion); *Joseph v. Joseph* (1948), 336 Ill.App.258, 83 N.E.2d 600; and *People ex rel. Kilduff v. Brewer* (1927), 328 Ill. 472, 160 N.E. 76, are cited for the propositions that an unconstitutional statute is void *ab initio*; that such a statute does not give a court jurisdiction; and that where a court lacks jurisdiction its judgments may be attacked at any time. The first two cases (*Grasso* and *Rau*) did involve the constitutionality of statutes but the attacks were initially made in the trial court; the other two cases (*Joseph* and *Kilduff*) had nothing to do with the constitutionality of statutes of the effect thereof; none of the four cases was a criminal case; all four of them were handed down before the Supreme Court decided *Amerman* (1971); and none of them deals with

the proposition that attacks on the constitutionality of a statute must initially be made in the trial court.

We therefore conclude that, insofar as Case No. 58879 is concerned, nothing remains before us and we pass on to the other appeal.

## No. 59325

In No. 59325, Roy L. Hamil, was found guilty following a bench trial of the crimes of attempt rape (Ill. Rev. Stat. 1971, ch. 38, par. 8—4) and aggravated kidnaping (Ill. Rev. Stat. 1971, ch. 38, par. 10—2) and was sentenced to a term of from 3 to 14 years on each charge, the sentences to run concurrently. Defendant appeals on the ground that the evidence was insufficient to establish his guilt beyond a reasonable doubt. We disagree and affirm the judgment.

The complaining witness testified at trial that on December 2, 1971, at 7:30 A.M., she left her home and was proceeding to her place of employment. As she walked down the street, the defendant pulled up in a white Chevrolet and asked her for directions. As she stood next to the car, he grabbed her left arm and pulled her into the vehicle. She began to cry and asked him to release her. Defendant put his hand on her throat and told her to shut up or he would kill her. He then drove the car through several alleys and stopped near the side of a building so that the passenger's door could not be opened. Defendant ordered her to remove her coat, but she refused. He then ordered her to lift up her dress and pull down her pantyhose. She began to fight off the defendant and struggled to get to the driver's door of the vehicle to escape. During the fight, the back and arm of her coat were torn. Defendant pulled down her pantyhose and put his hand underneath her dress. He lifted off her brassiere and fondled her breasts. He then asked if she was a virgin and she replied that she was. She testified that defendant stated that if she was a virgin he would let her go, but if she was not, he was then going to have intercourse with her. Defendant was exposed and sexually aroused. He stuck his finger into her vagina and ordered her to touch him, but she refused. Defendant said she was "nothing but a virgin and no good." He got behind the wheel of the car and, as he started to pull away, the complainant opened the passenger door and jumped out. As she went by the rear of the automobile, she saw the license number of the car. She ran to a nearby bus stop and told a woman that she had just been attacked. The woman took her to a nearby restaurant where she called one of her fellow employees who picked her up and drove her to her sister-in-law's home. The police were called. Complainant told the police what had occurred and gave them the license number of the defendant's car. Police took her to Northwest Hospital where she was

examined. Later that day, she attended a lineup consisting of six men and identified the defendant as her assailant.

The complainant's sister-in-law testified that on December 2, 1971, at approximately 8:45 A.M., the complainant came to her home in a hysterical state. After calming down, the complainant told her what had occurred and the police were called.

It was stipulated to at trial that if Dr. Gaetano Raineri were called to testify, he would testify that on December 2, 1971, he examined the complaining witness. His examination disclosed "no external trauma. The hymen intact."

It was also stipulated that if the complaining witness' mother were called to testify, she would testify that when the complainant left her home on December 2, her coat was not torn. The coat was introduced into evidence.

Defendant testified that on December 2, 1971, at 7:45 A.M., he was on his way to work when he observed the complaining witness waiting for a bus. He pulled his car up to her and asked her whether she wanted a ride. She agreed and entered his car. Defendant testified that during the drive he had an extensive conversation with the complaining witness, talking about where she worked and where she went to school. He added that he asked her for a date, but she refused. Defendant stated that he propositioned her. She became very upset and slapped him several times. He testified that the complainant stated that she was a virgin and would not listen to his propositions. She demanded to be let out of the car. Defendant testified that he immediately pulled over to the curb and let her out of the car.

Defendant maintains that we ought to reverse his conviction for attempt rape and aggravated kidnaping because the evidence at trial was insufficient to prove him guilty beyond a reasonable doubt.

■■ To support a conviction for attempt rape, the proof of which includes every element of the crime of rape except penetration, the evidence must show that the male person intended to have carnal knowledge of the female person against her will by means of force and that he took a substantial step toward accomplishing that purpose (*People v. Moore* (1966), 77 Ill.App.2d 62, 222 N.E.2d 142). Thus, an indecent assault, however aggravated, will not warrant a conviction for attempt rape unless there is proof of intention to have intercourse by force and against the will of the female. *People v. Hiller* (1955), 7 Ill.2d 465, 131 N.E.2d 25; *People v. Jenkins* (1930), 342 Ill. 238, 174 N.E. 30.

■■ The intent to commit rape may, however, be inferred from the conduct of the accused, the character of the assault, the acts done and the time and place of the occurrence, as well as from the words spoken.

(See *People v. Young* (1972), 6 Ill.App.3d 119, 285 N.E.2d 159; *People v. Moore* (1966), 77 Ill.App.2d 62, 222 N.E.2d 142; *People v. Kruse* (1943), 385 Ill. 42, 44, 52 N.E.2d 200.) The fact that the defendant broke off the attack after encountering resistance does not change the nature of the attack up to that point. *People v. Poe* (1969), 109 Ill.App.2d 295, 248 N.E.2d 715.

■■ Defendant's contention that no intent to rape was shown because the victim was told "[I]f you are a virgin I will let you go, but if not, I am going to * * * [have intercourse with you]" is fanciful. Even upon being told by the victim that she was a virgin, the defendant persisted in his attack by inserting his finger into her genitals and by ordering her to stimulate his organ with her hands. Here the defendant's actions, both before and after his equivocal statement about the victim's virginity, bespeak his intent much louder than his words alone. To use the language of the court in *People v. Moore* (1966), 77 Ill.App.2d 62, 222 N.E.2d 142, at page 67:

> "His was not just an amorous advance. He did not claw at her clothing just to kiss her lips; he did not threaten to kill her just to feel her breasts."

The only realistic conclusion to be drawn from the defendant's conduct toward Miss Lingle is that he initially intended to rape her. His conduct unquestionably constituted a substantial step toward achieving that objective. He is therefore guilty of attempt rape even though he eventually abandoned the project.

We now turn to a consideration of defendant's contention that he was not proved guilty beyond a reasonable doubt of the crime of aggravated kidnaping. Kidnaping (Ill. Rev. Stat. 1971, ch. 38, par. 10—1) is defined as:

> "§ 10—1. Kidnaping
>
> (a) Kidnaping occurs when a person knowingly:
>
> (1) And secretly confines another against his will, or
>
> (2) By force or threat of imminent force carries another from one place to another with intent secretly to confine him against his will, or
>
> (3) By deceit or enticement induces another to go from one place to another with intent secretly to confine him against his will.
>
> (b) Confinement of a child under the age of 13 years is against his will within the meaning of this Section if such confinement is without the consent of his parent or legal guardian.
>
> (c) Sentence.
>
> Kidnaping is a Class 3 felony."

Aggravated kidnaping is defined as:

"§ 10—2. Aggravated Kidnaping

(a) A kidnaper within the definition of Section 10—1(a) is guilty of the offense of aggravated kidnaping when he:

(1) Kidnaps for the purpose of obtaining ransom from the person kidnaped or from any other person, or

(2) Takes as his victim a child under the age of 13 years, or

(3) Inflicts great bodily harm or commits another felony upon his victim, or

(4) Wears a hood, robe or mask or conceals his identity.

As used in this Section, 'ransom' includes money, benefit or other valuable thing or concession.

(b) Sentence.

(1) Aggravated kidnaping for ransom is a Class 1 felony for which an offender may be sentenced to death under Section 5—5—3 of the Unified Code of Corrections. If the accused is found guilty by a jury, a sentence of death shall not be imposed by the court unless the jury's verdict so provides in accordance with Section 5—5—3 of the Unified Code of Corrections.

(2) Aggravated kidnaping other than for ransom is a Class 1 felony for which an offender may not be sentenced to death."

The statute requires that one first establish that a kidnaping has occurred before establishing that an aggravated kidnaping has been committed.

■■ We conclude that the evidence at trial established beyond a reasonable doubt that defendant committed the crime of aggravated kidnaping. Notwithstanding defendant's protestations to the contrary, the evidence clearly established that he confined the complaining witness in the car while he drove through several alleys before finally parking in an alley next to a building where she could not open the passenger door. Such conduct constitutes a secret confinement within the meaning of the statute. *People v. Bishop* (1953), 1 Ill.2d 60, 114 N.E.2d 566, and *People v. Landis* (1966), 66 Ill.App.2d 458, 214 N.E.2d 343.

■■ The credibility of the witnesses is a matter within the province of the trial judge sitting as the trier of fact and a court of review will not disturb that finding unless the proof is so unsatisfactory as to justify a reversal. (*People v. Coleman* (1971), 49 Ill.2d 565, 276 N.E.2d 721.) Further, the testimony of the complaining witness alone, if positive and credible, is sufficient to sustain a conviction even though contradicted by the accused. (*People v. Wright* (1972) 3 Ill.App.3d 829, 279 N.E.2d

398.) Here the complaining witness' version of what occurred was corroborated by her torn coat which was admitted into evidence and her mother testified that the coat was not torn when the complaining witness left home shortly before the abduction.

■■ We conclude that the evidence sustains the trial court's finding that Hamil was guilty of kidnaping. And, since we have already held that the evidence sustains the finding of attempt rape, it follows that the evidence also sustains the finding of guilty of aggravated kidnaping.

We therefore affirm the judgment.

Judgement affirmed.

EGAN, P. J., and GOLDBERG, J., concur.