THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES J. HANLEY *et al.*, Defendants-Appellants.

First District (5th Division)    Nos. 62145, 63012 cons.

Opinion filed June 24, 1977.

James J. Doherty, Public Defender, of Chicago (Richard D. Kharas, Assistant Public Defender, of counsel), for appellant Joseph T. Trader.

Marshall Weinberg, of Chicago, for appellant James J. Hanley.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Jeffrey C. Pattee, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendants, James J. Hanley and Joseph Trader, were found guilty of attempt rape and were sentenced, respectively, to 1½ to 4 years and 1 to 4 years imprisonment.[1] Vernon Peters, who was jointly tried and convicted with defendants, takes no part in this appeal which presents the following issues for review: (1) whether the conduct of the trial court was so prejudicial that they were denied a fair trial; and (2) whether they were proved guilty beyond a reasonable doubt. Trader additionally requests that his sentence be reduced to time served.

In April 1974, Diane Martin and defendants, among others, attended a party in the home of Terry Anderson. Diane testified that at 7:30 that evening she drove her automobile to the home of her boy friend, Mickey, and after picking up other friends they eventually arrived at the Anderson home around 8:45 p.m. Not long after their arrival, Diane drove a girl friend in the group to her home—returning to the party at 9:45 p.m. Upon her return, Diane discovered that Mickey had left but was expected back. She entered the house and waited for him for about 30 to 45 minutes. During this interval, as she sat on the couch located in the front room, the defendants and Peters—all of whom she knew—entered the room.

Trader testified that when Diane returned to the Anderson home she was upset as the result of being followed by an unidentified car after dropping her girl friend off and that, to comfort her, he sat on the couch,

---

[1] We note that the memorandum of orders recorded Hanley's sentence as 1½ to 4½ years and Trader's as 1 to 3 years. Where a conflict regarding sentencing arises between the common law record and the report of proceedings, the latter governs. (*People v. DePratto* (1976), 36 Ill. App. 3d 338, 343 N.E.2d 628.) Here, the report of proceedings reflects the sentences which have been noted in the text of the opinion.

put his arm around her, and carried on a conversation with her. Diane stated that she was unsettled because someone had followed her, but that Trader had his arm resting upon the back of the couch rather than around her person. Trader further testified that a distraught Diane announced, "I'd do anything for a bag," and that he had seen her inject heroin into her arm on previous occasions by means of a syringe. Thus, when she voluntarily walked into a bedroom, he, Hanley and Peters followed her. Diane gave a contrary version regarding her entry into the bedroom, namely, that she decided to leave the Anderson home and, after she told the others what to say to Mickey upon his return, she proceeded through a hallway which connected the front room to the kitchen, where the rear entrance was located, and as she passed through the hallway Hanley, Peters, and Trader dragged her into a bedroom.

Trader testified that once in the bedroom Diane willingly laid on the bed and that, while she was kissing Peters, he and Trader pulled down her jeans and panties. He stated that she did not object to any of the physical interaction until Hanley engaged in an act of cunnilingus, at which point she cried out, "Please don't do it. Leave me alone. I don't want to do it." Trader testified that he then left the room, arriving home at 9:50 p.m., which time of arrival was corroborated by the testimony of his mother.

Diane, however, said that she struggled with defendants from the moment she was pulled from the hallway and that her resistance continued throughout the time she and defendants were in the bedroom. She further gave the following account of the events which transpired in the bedroom during a period of approximately 35 minutes. She was pushed down upon the bed in such a manner that she was lying on her back. Her jeans and panties were then pulled down as Peters, who was poised at the upper right hand quadrant of her body, alternately held down her arms and on occasion covered her mouth. She scratched, kicked, and attempted to escape from defendants and, in the course of this activity, broke the plastic dust cover of the stereo turntable which was located in the bedroom. As Hanley put his mouth to her vagina, she scratched him with her fingernails and pulled his hair. Hanley then changed positions and placed his penis into her vagina. He attained penetration for a duration of about two minutes. On cross-examination, she answered that penetration was with his penis and not with his finger. During this time, she continued scratching and kicking and, at one point, while trying to turn away from him, she was struck across the back with a candlestick. When Hanley finally withdrew, she observed Trader masturbating, and he then attempted to insert his penis into her vagina but couldn't because she continually turned her body away from his. Trader repeated his efforts a second time, and Diane again prevented penetration. On cross-examination, she admitted not knowing whether

Trader was attempting penetration with his finger or his penis. Thereafter, Peters attempted to insert his penis into her vagina while Trader held her down. When she scratched his face and attempted to escape, he ceased trying to penetrate.

She said that Anderson then entered the bedroom and, after telling Peters to leave, he cautioned her not to notify the police. She dressed and left after Anderson found her car keys. Anderson's version was that he heard a commotion upstairs as if furniture was being moved, listened for a short while, and then went to the first floor, where he found Diane fully clothed and standing in the dining room. After assisting her in looking for her car keys, he saw her leave. During this time, he did not see defendants nor did she say anything about rape to him. However, in a statement given to police on the night in question, he said that Hanley, Peters and Diane were in the bedroom and that he had heard the sound of flopping around on the bed and Diane's pleas for her release.

Diane testified that as she drove away from the Anderson home she saw a friend, Danny Osborne, whom she asked to drive her car because she was upset and had just been raped. She and Osborne testified that they drove around until Diane was reunited with Mickey and her father. Osborne also testified that Diane was crying at the time he first saw her and that she said she had been raped by defendants.

Diane was taken to a hospital, where an examination revealed the absence of spermatozoa. Diane's mother testified that at the hospital she observed imprints on Diane's arms and back which had not been present the day before and that within the next couple of days they turned black and blue. At the hospital, Officers Roach and Nealis observed that Diane's face was swollen and that her arms and legs were bruised. They further testified that when they later visited the Anderson home, they found bedsheets strewn about the bedroom and a broken stereo dust cover on the floor. Officer Nealis also stated that Hanley, when apprehended, admitted only an act of cunnilingus. An assistant State's Attorney testified that Hanley questioned him as to whether such an act could furnish a basis for a charge of rape.

Diane was called in rebuttal and testified that she never used heroin and, in support thereof, she exhibited her arms for viewing.

The trial court found that the State had proved all of the elements of rape beyond a reasonable doubt, with the exception of penetration, and found defendants guilty of attempt rape.

OPINION

■■ Defendants first contend that the trial court, by its remarks and conduct, displayed a prejudice in favor of the prosecution and against them and their attorneys sufficient to deprive them of a fair trial. We

disagree. To afford defendants a fair trial, "the judge [need] not play the part of an owl, merely gazing at the participants and looking wise. He must observe with care and seek to understand the issues and the testimony." (*People v. Gaston* (1967), 85 Ill. App. 2d 403, 408, 229 N.E.2d 404, 406.) In a bench trial, it is the duty of the judge to arrive at his conclusions upon a calm and unbiased consideration of the facts and, while he is a searcher of truth, he may not by his questions or attitude discomfort or confuse the witnesses. (*People v. Giacomino* (1932), 347 Ill. 523, 180 N.E. 437.) In predicating a claim of reversible error upon the remarks of the trial court made during the course of a bench trial, defendant must show that he had in some fashion been harmed by them. (*People v. Nurse* (1975), 34 Ill. App. 3d 42, 339 N.E.2d 328.) Comments of the trial court which were invited or provoked by defense counsel do not amount to reversible error (*People v. Watson* (1967), 87 Ill. App. 2d 453, 231 N.E.2d 695; *People v. Smith* (1965), 63 Ill. App. 2d 369, 211 N.E.2d 456), and a defendant is not necessarily prejudiced by the court's rebuke of codefendant's counsel (*People v. Johnson* (1975), 26 Ill. App. 3d 1000, 326 N.E.2d 69). The latitude given the defense during cross-examination is within the discretion of the trial court, and an abuse of that discretion is not shown where the rulings complained of seek merely to eliminate confusion and curtail repetition. (*People v. Crenshaw* (1959), 15 Ill. 2d 458, 155 N.E.2d 599.) In a bench trial, the determination as to the credibility of the witnesses and the weight to be given their testimony is for the trial judge and, prior to the close of all the evidence, he may express his disbelief of the testimony of a witness as long as he does not adversely affect the balance of the witness's testimony. (*People v. Faginkrantz* (1960), 21 Ill. 2d 75, 171 N.E.2d 5.) In his summation, the trial judge may attach great weight to a particular witness where he has given due consideration to all of the evidence. *Crenshaw.*

Here, defendants complain of the trial court's conduct in the following instances: (1) it chastized the defense for not entering into a stipulation, later refused to allow it to stipulate, and still later attempted to force the defense into a stipulation; (2) it rebuked the defense for not apprising itself prior to trial as to what the testimony would reveal; (3) it accused the defense of playing tricks; (4) it restricted the cross-examination of the complaining witness; (5) its expression of sympathy for the complaining witness exhibited a bias against the defense; and (6) prior to the close of all the evidence, it commented that it held the testimony of a defense witness for naught. For the reasons to be detailed, we do not believe that the conduct of the trial denied defendants a fair trial.

■■ First, while the court did chastize only the defense for not reaching a stipulation regarding the testimony of the microanalyst, its rebuke fell more heavily on the State for calling this witness when it

became apparent that both sides were aware that her testimony was meaningless. We can find no resulting bias or prejudice against the defense. (*Nurse.*) Later, when Diane was asked to identify the person whom she referred to as Hanley, his attorney offered to stipulate that his client was in the courtroom. Such a stipulation falls short of the clarity of an actual identification called for in the question and was properly rejected. Thereafter, during the cross-examination of Diane, she was asked but could not remember whether she had testified at the preliminary hearing that she had been hit with a candlestick. When the defense sought to refresh her recollection by handing her a copy of her prior testimony to peruse, the court sought a stipulation as to whether such testimony was included therein. Upon determining that the State did not know whether or not she had so testified, the court rebuked the prosecutors for their lack of preparation and apologized to the defense. We find no harm resulting here to defendants.

Second, a review of the record also discloses that each time an attorney exhibited a lack of pretrial preparation, the court made critical comments, but these remarks fell as heavily upon the State as upon the defense—resulting in no prejudice to defendants. *Nurse.*

Third, the court's use of the term "trick" was made in reference to Peter's attorney; therefore, no prejudice was visited upon Hanley or Trader. (*Johnson.*) Moreover, while the choice of the word was improvident, it is clear that its use by the court was not derogatory. The State had objected to the rephrasing of complainant's prior testimony in a light most favorable to the defense in the posing of leading questions during cross-examination. In overruling the State's objection, the court observed that it was a "trick of cross-examination" and sustained the State's objections only when the prior testimony was actually misstated. It appears also that counsel understood the use of the term as being either favorable or as a quip by later referring to himself as "tricky." In any event, we find no prejudice. *Watson; Smith.*

■■ Fourth, we are satisfied from a review of the record that defendants received a full and fair cross-examination of complainant. The court stated, on numerous occasions, that the defense was entitled to wide latitude in examining the State's witnesses and, from our review, it actually allowed extensive cross-examination. It overruled many of the State's objections to apparently irrelevant questions, stating that as the trier of fact, it wished to be informed of all competent evidence and that, should the elicited testimony be irrelevant, it would later entertain motions to strike and instructed the defense on occasion as to how to proceed in order to extract the information sought. Obviously, in a trial where the State's witnesses are subject to cross-examination by three independent defense attorneys, which as to complainant was over a

period of nearly seven hours, a tendency toward repetition is present. (*Crenshaw.*) From the trial transcript here, it appears to us that the court properly curtailed such repetition. As to the limitations placed upon the cross-examination by the individual attorneys, we see no abuse of discretion in curtailing prolonged examination regarding (a) the route followed by complainant at a time when she was not in the company of defendants—particularly since there is no substantial disagreement concerning the time of her arrival at the scene of the occurrence; or (b) the identity and activities of those in the Anderson home who did not observe the occurrence and who apparently had no opportunity to do so.

■■ Fifth, on two occasions the court expressed sympathy for the emotional condition and well-being of the complainant. We note that during her direct examination, she testified in detail as to the position and actions of herself and defendants, except that she was avoiding the use of the terms "penis" and "vagina." When the prosecutor began some leading questions, the defense objected and asked for a conference. The court took this opportunity in chambers to express sympathy for complainant, whom he had observed to be quite emotionally shaken. However, the judge expressly stated that he had not made a determination as to whether she was sincere or merely acting a part. Furthermore, he sustained the defense objection and prohibited the State's use of leading questions. Later, during her direct examination, the defense apparently agreeing with the court's observation, suggested the exclusion of her family to lessen the emotional strain which was making it difficult for her to testify. On cross-examination, when she was asked to define the term erection, complainant began to weep. At that point, the defense suggested a recess so that she could regain her composure. During this recess, a discussion was had in chambers where the judge stated that complainant was breaking down emotionally and that he could understand the hesitancy of women to prosecute rape cases. The court, however, agreed that the last question posed by the defense was a proper one and that defendant's rights would be jeopardized absent a full opportunity for cross-examination, but stated that Peter's attorney was exceeding proper limits by the attitude he was using and by his repeated misstatements of her prior testimony.

The thrust of defendants' argument is that the conduct of the court as stated above establishes a bias against them prior to the close of the evidence, and that this was further borne out in the court's summation of the evidence which placed great weight upon her testimony. We disagree. In spite of the comments, the judge in each instance ruled in defendants' favor, repeatedly stating an awareness of his dual role and that he was interested in hearing all competent evidence. Although great weight was

attributed to Diane's testimony, the record shows that he gave due consideration to all of the evidence in his summation. (*Crenshaw*.) Moreover, it is inconceivable that one swayed by bias and compassion would dissect "favored" testimony and conclude that it was insufficient to prove an essential element of the crime charged.

■■ Sixth, while the trial judge prior to the close of all of the evidence stated that the testimony of a State's witness as well as that of a defense witness meant nothing to him, these comments were uttered at a time and in such a manner that they did not adversely affect the witnesses' ability to testify. (*Faginkrantz*.) Therefore, we find no resulting prejudice.

■■ Defendants next contend that they were not proved guilty beyond a reasonable doubt of attempt rape. Their position is that because an act of cunnilingus was completed and because complainant, through inexperience or lack of observation, was unable to say whether Trader attempted penetration with a finger or a penis, the only crime if any with which they could have been charged was deviate sexual assault. We cannot agree. Attempt rape includes every element of the crime of rape except penetration, and to commit this offense the male must intend to accomplish intercourse by force and against the female's will and must take a substantial step toward accomplishing his purpose. (*People v. Moore* (1966), 77 Ill. App. 2d 62, 222 N.E.2d 142.) A conviction of attempt rape is not warranted by an indecent assault, however aggravated, without proof of such an intention (*People v. Kolar* (1966), 66 Ill. App. 2d 347, 214 N.E.2d 519), which, however, may be inferred from the surrounding circumstances (*People v. Triplett* (1970), 46 Ill. 2d 109, 263 N.E.2d 24). Among the factors to be considered in inferring such intent are the conduct of the accused, the character of the assault, the nature of the acts done, and the time and place of the occurrence. (*People v. Bazzelle* (1970), 130 Ill. App. 2d 131, 264 N.E.2d 457.) A conviction of attempt rape will be sustained against more than one defendant where the evidence is sufficient to show that each of them, in furtherance of a common design, either perpetrated the crime or was present aiding or abetting its commission (*People v. Mosher* (1949), 403 Ill. 112, 85 N.E.2d 658), and the guilt of the accused will not be obviated by the mere fact that he is frustrated in or later desists from his purpose (*People v. Hiller* (1955), 7 Ill. 2d 465, 131 N.E.2d 25). Moreover, where the intent to forcibly procure intercourse and a substantial step in furtherance is established by the surrounding circumstances, the inability of the victim due to a lack of previous sexual experience to testify with certainty whether penetration occurred will not relieve defendant of guilt. (*People v. Moreno* (1974), 18 Ill. App. 3d 347, 309 N.E.2d 792.) In a bench trial, the question of the credibility of the witnesses and the weight to be given their testimony is for the determination of the trial court, and its finding

will not be disturbed unless the evidence is so unsatisfactory as to raise a reasonable doubt of guilt. *People v. Novotny* (1969), 41 Ill. 2d 401, 244 N.E.2d 182.

■■■ Here, we find, as did the trial court, that Diane's testimony was clear and convincing in all matters except penetration and that it was corroborated by her complaint, the swollen condition of her face, and the bruises on her arms, legs and back. Defendants' intent can be inferred by their pulling her into a bedroom, pushing her onto a bed, the forceful disrobing by Trader, their combined efforts to hold her down, their attaining erections, Hanley's insertion of his penis and movement while lying on top of her, and Trader's lying on top of her while attempting to insert either his finger or his penis—which she frustrated twice by pulling away from him. (*Moreno; Williams; Bazzelle.*) Under the circumstances, the judgment of the trial court will not be disturbed.

Trader, without suggesting the existence of a supporting reason, requests the reduction of his sentence to time served. A reviewing court must exercise its authority to reduce sentences with great caution and circumspection, as the trial court is in a superior position during the course of the trial and the hearing in aggravation and mitigation to make a determination regarding punishment and where, as here, the sentence is within legislative limitations, it will not be disturbed on review absent a great departure from the fundamental purpose and spirit of the law. (*People v. Stephens* (1974), 18 Ill. App. 3d 971, 310 N.E.2d 824.) A review of the record reveals no such departure; therefore, Trader's request is denied.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.