THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BRUCE OETGEN, Defendant-Appellant.

Third District   No. 77-327·

Opinion filed July 6, 1978.—Supplemental opinion filed on denial of rehearing
August 17, 1978.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (James E. Hinterlong and Joseph A. Mueller, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:

The defendant, Bruce Oetgen, was charged by information with attempt rape, burglary and aggravated battery in violation of sections 8—4, 19—1, and 12—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4, 19—1, and 12—4). Following a jury trial in the Circuit Court of Fulton County, defendant was convicted of all three crimes and sentenced to a term of not less than 2 nor more than 6 years for attempt rape, not less than 2 nor more than 6 years for burglary and not less than 1 year nor more than 3 years for aggravated battery. The sentences imposed were ordered to be served concurrently. Defendant appeals from his convictions on all charges.

The facts of the alleged offenses are essentially undisputed. Defendant's theory of defense on appeal is that he lacked the requisite intent to rape necessary for the breaking and entering to be burglary and that he also lacked the requisite intent to commit rape. Further, he argues that he did not make a substantial step toward having sexual intercourse with the complainant, Pamela Ashley. Miss Ashley testified for the State. She related in detail about the happenings on the evening of April 15, 1977, and early morning of April 16, 1977, when the incident occurred. She

reported that she left work at Grahahm Hospital at 11:45 p.m., and went straight home. After returning home she locked the inside locks on both the front and back doors. Her bedroom was located on the first floor of the two-story house she shared with her roommate Rhonda Lane, who was not home that particular evening. Both of Miss Ashley's bedroom windows had their shades drawn but one living room window which was directly across from her bedroom door had a lace-like curtain over it and the shade on it was not drawn. The door to the complainant's bedroom was open and only the lamp in the bedroom was on. Miss Ashley undressed in her bedroom and put on a pair of shorty pajamas and her panties. She walked by the door of her bedroom which faced the living room window. She then lay in bed with the covers over her reading a book. At approximately 12:30 a.m., on April 16, 1977, Miss Ashley heard a loud noise from the front door, which upon subsequent examination appeared to have been kicked in. As she leaned up in bed, startled, a man jumped up at the doorway to the bedroom with a stocking cap over his head. The complainant yelled and then grabbed the telephone and pushed for the operator. The intruder jerked the telephone from her and threw it across the room. He then pushed Miss Ashley down on her back in the bed and climbed on top of her. A struggle ensued with Miss Ashley screaming and swinging her arms in an attempt to ward off the attacker. She reported that the man stated to her that if she did not fight him he would not hurt her. Miss Ashley testified that she told the intruder that if he would leave right then she would not say anything. The man allegedly responded by stating that he thought Miss Ashley could recognize him even with the mask on and he couldn't leave because she would get him in trouble. During this part of the struggle the bedroom lamp was still on. (Even with only the limited lighting on Miss Ashley positively identified the stocking cap allegedly worn by the attacker which was ultimately admitted into evidence.) Miss Ashley stated that she then started yelling again at which time the man struck her in the eye with his fist. He then rose up a little from the bed, switched off the bedroom lamp that was sitting on the dresser, and slammed shut the bedroom window. He then put his hands inside her pajamas and put his hands on her breasts. He also felt her thighs and legs. Miss Ashley then was able to pull the man's cap off and struck him on the head with a ash tray she was able to grab. He thereupon pulled the bed covers over her head while she was screaming. A neighbor across the street, Wilberta Owens, testified that she heard a loud noise and screaming coming from Miss Ashley's house and telephoned the police. The police arrived within five minutes of the call. Sergeant Groves of the Canton Police Department went to the back door of the Ashley residence while Officer Gerry Foreman went to the front door. At this time the man got up and ran to the back door. Upon seeing

Sergeant Groves, the man returned to the living room and said to the complainant, "Tell them I am your friend." The defendant later identified as Bruce Oetgen, was subdued and arrested by Officer Foreman upon his entry into the house. Sergeant Groves testified that the defendant, who was acquainted with Groves, stated to him upon being apprehended, "I couldn't help myself, Mr. Groves. I saw her through the window and I couldn't help myself." Immediately after the defendant made this statement, Officer Sherwin Gilpin arrived on the scene. Officer Gilpin testified that at that time he noticed a bulge in the pelvic region of the defendant's trousers, but that he did not then make a physical examination or search of Oetgen.

Miss Ashley was subsequently taken to the hospital for her eye injury which became swollen shut and caused her to remain home from work for two days.

The defendant raises two issues on appeal:

(1) Whether the defendant's conviction for attempt rape must be reversed where there is no evidence of express intent to rape and where the acts and statements of the defendant are so equivocal that it is impossible to conclude beyond a reasonable doubt that the defendant either had a specific intent to have sexual intercourse or made a substantial step toward having sexual intercourse as opposed to some other form of sexual activity with the complaining witness;

(2) Whether if the court reverses the defendant's conviction for attempt rape on the basis of insufficient evidence to prove defendant's specific intent to rape beyond a reasonable doubt, the court must also reverse defendant's conviction for burglary, an element of which in this case is the specific intent to rape.

■■ The defendant's first argument is that insufficient evidence was produced at the trial to prove beyond a reasonable doubt that he did have the specific intent to rape Pamela Ashley or that he did make a substantial step toward having sexual intercourse with her. In support of his argument, defendant urges that he had not removed any of his own clothing or the complainant's, or even tore any of her clothing. We disagree with defendant's theory of defense and conclude that the jury could properly decide that defendant's acts and words were sufficient circumstantial evidence to prove beyond a reasonable doubt that defendant had the specific intent to rape Miss Ashley, that is the specific intent to compel her to have sexual intercourse with him by force and against her will. (*People v. Moore* (1966), 77 Ill. App. 2d 62, 222 N.E.2d 142.) The *Moore* case holds that attempt to commit rape may be inferred from the conduct of the defendant, the character of the assault, the words spoken, the acts done, and the time and place of the occurrence. In more

recent cases the same criteria have been followed under facts similar to the instant case to uphold a finding of attempt rape. *People v. Triplett* (1970), 46 Ill. 2d 109, 263 N.E.2d 24; *People v. Hamil* (1974), 20 Ill. App. 3d 901, 314 N.E.2d 251.

■■ In the case of *People v. Mayer* (1945), 392 Ill. 257, 64 N.E.2d 372, under facts showing a similar assault at night, upon a woman who was a stranger to the attacker, and in a secluded place, the Illinois Supreme Court stated definitively on the subject of intent necessary to commit attempt rape, "We think, in determining the question of intent, the jury had the right to consider the *experience of mankind.* Law and education has not completely eradicated the evil instinct of some men to assault women. The survival of this instinct is recognized by the law, which permits a jury to convict, in cases of this kind, upon the uncorroborated testimony of a woman, if, from the circumstances, the jurors are satisfied of the defendant's guilt beyond a reasonable doubt." (Emphasis added.) (*People v. Mayer* (1945), 392 Ill. 257, 259, 64 N.E.2d 372, 373.) The jury in the case at bar considered the experience of mankind along with the other strong circumstances pointing toward defendant's guilt. The jury considered defendant's admission that he watched the complainant in her bedroom, where she undressed and dressed for bed, and his statement to the police that he could not help himself, along with the other evidence that he forced her door down at night and laid on top of her in bed, while he reached under her pajamas to feel her breasts, thighs and legs. One police officer reported a bulge in the pelvic region of defendant's trousers. Clearly defendant's few words and many actions speak loudly to proclaim his intent with regard to the complainant. We believe the jury considered this evidence along with the experience of mankind and properly found defendant guilty of attempt rape.

■■■ The case of *People v. Bush* (1960), 19 Ill. 2d 151, 166 N.E.2d 91, recites that the essential elements of the crime of attempt rape are a specific intent so to do the act and an assault of such a nature as to amount to rape if the purpose of the assault had been accomplished. We believe defendant's actions in breaking down the door, laying on top of the complainant in her bed, and touching her in private places amounted to a substantial step toward the commission of the offense of rape. Indeed had not the police promptly arrived to frustrate the defendant's actions the rape may well have been accomplished. We find little merit in the argument that the complainant's successful struggle to defeat the defendant's purposes and the prompt arrival of the police can destroy the otherwise clearly manifested specific intent of the defendant to rape. The recent case of *People v. Hanley* (1st Dist. 1977), 50 Ill. App. 3d 651, 365 N.E.2d 676, also supports the conclusion that both the actions of the defendant and circumstances of the attack can support an inference by

the jury of the specific intent to rape and that a touching of the complainant by the defendant in her personal places in certain circumstances together with the required specific intent to rape can also satisfy the requirement of a substantial step toward the commission of the rape necessary for attempt rape.

■■ The cases of *People v. Soznowski* (1961), 22 Ill. 2d 540, 177 N.E.2d 146; *People v. Bush* (1960), 19 Ill. 2d 151, 166 N.E.2d 91; and *People v. Hayes* (1st Dist. 1976), 37 Ill. App. 3d 772, 347 N.E.2d 327, relied upon by the defendant are distinguishable. The *Soznowski* and *Hayes* cases were not concerned with the offenses of rape or attempt rape. *Soznowski* involved a burglary in which the defendant battered a woman as she lay sleeping in bed, while *Hayes* involved the offense of battery by touching a woman passerby in an insulting manner. The case of *People v. Bush* (1960), 19 Ill. 2d 151, 166 N.E.2d 91, did involve a charge of assault with intent to commit rape, with the conviction reversed because of a failure to prove the necessary specific intent to rape. In short and in summary the conduct complained of in all the three cases consisted only of indecent proposals, undue familiarity, insulting conduct or amorous advances as typified by *Bush*. In the present case defendant's violence and threat accompanied by many physical actions with obvious sexual overtones, indicated an attempt to overcome Miss Ashley despite her resistance. Defendant's further reliance upon *People v. Cain* (1966), 75 Ill. App. 2d 282, 221 N.E.2d 127 (abstract), is equally without merit because the opinion is only published in abstract and has no precedental value.

■■ Defendant's second argument that a reversal of his conviction for attempt rape must also cause his conviction for burglary to be reversed because an element of the burglary was also the specific intent to rape is equally without merit. In light of our decision on the first issue raised, defendant's second issue becomes moot.

The proof supports the defendant's convictions for attempt rape, burglary, and aggravated battery and the judgments of conviction of the Circuit Court of Fulton County are affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:
Upon petition for rehearing, which we have denied, defendant's further reliance upon *People v. Cain* (1966), 75 Ill. App. 2d 282, 221 N.E.2d 127 (abstract), is without merit. We have again read and examined

*Cain* and find the facts there are significantly different from the case at bar. The victim in *Cain* was a 4-year-old girl who did not testify. The victim in the case at bar testified in detail to the culpable actions of the defendant.

We repeat, the *Cain* opinion is equally without merit because the opinion is only published in abstract form and has no precedental value. It is not generally available to the members of the bar.

The Committee Comments to Supreme Court Rule 32 (Ill. Rev. Stat. 1969, ch. 110A, par. 32) (repealed October 1, 1971), are indicative of the special problem and the undesirable result caused by appellate courts using opinions published in abstract only.

> "The Committee was of the opinion that the practice of printing only an abstract of some of the decisions of the Appellate Court is undesirable, as it has the effect of creating a body of precedents not generally available to members of the bar. The Committee understands that the whole question of length, form, and publication of opinions is a topic of current consideration by the judges of the Appellate Court. Accordingly, the rule is framed as discretionary." Ill. Ann. Stat., ch. 110A, par. 32, Committee Comments, at 24 (Smith-Hurd 1968).

The editorial summary and headnotes provided in cases published in abstract, which are all that are available in both official and unofficial abstract versions of reported appellate court opinions, are not the words of the author of the opinion and in themselves have no binding authority as precedents.

Significantly Supreme Court Rule 23 (Ill. Rev. Stat. 1977, ch. 110A, par. 23) (effective January 1, 1972), has been regularly used to reduce the number of nonprecedental opinions published in recent years.

STENGEL and SCOTT, JJ., concur.